UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FAYE L. R.,  )<br> )<br>      **Plaintiff**  )<br> )<br>v.  )<br> )<br>ANDREW M. SAUL,  )<br>**Commissioner of Social Security,**  )<br> )<br>      **Defendant**  ) | No. 2:20-cv-00023-NT |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred by failing to conclude that her venous insufficiency and chronic sleep problems were severe impairments and by assessing a residual functional capacity (RFC) unsupported by substantial evidence. *See generally* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 11). I discern no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Act through September 30, 2022, Finding 1, Record at 85; that she had the severe impairments of spondylosis and degenerative disc disease of the cervical spine and depressive disorder, Finding 3, *id*. at 86; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could frequently push, pull, operate hand controls, and reach overhead with her dominant right upper extremity, could occasionally crawl and climb ladders, could not climb ropes or scaffolds, was limited to performing simple tasks, and could not tolerate interaction with the public, Finding 5, *id*. at 89; that, considering her age (49 years old, defined as a younger individual, on her alleged disability onset date, June 21, 2017), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 94; and that she, therefore, had not been disabled from June 21, 2017, her alleged onset date of disability, through the date of the decision, February 19, 2019, Finding 11, *id*. at 95-96.[2] The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[2] In his last finding, the ALJ mistakenly listed the plaintiff's alleged onset date as May 21, 2017. *See* Finding 11, Record at 95. Nevertheless, he identified the correct date at the beginning of his decision, *see id.* at 83, and nothing turns on the error.

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Edema & Venous Insufficiency

The plaintiff first argues that the ALJ "should have recognized the functional significance of [her] venous insufficiency on her ability to manage the amount of standing that is typically required" by light work.  Statement of Errors at 6 (citation omitted).  She cites a June 1, 2018, progress note of treating physician Eric Worthing, M.D., *see id.*, reflecting that she reported experiencing "significant discomfort and swelling in her ankles" after spending "5-8 hours on her feet[,]" which resolved after she got home and put her feet up, Record at 943.  Based on this report, Dr. Worthing diagnosed her with "[b]ilateral lower extremity edema [c]onsistent with venous insufficiency" and recommended that she wear "compression stockings[.]"  Record at 942.

Contrary to the plaintiff's argument, the ALJ did consider her allegations concerning edema, deeming the impairment nonsevere on the basis that she had failed to demonstrate that it occurred frequently or resulted "in work related limitations[.]" *Id.* at 87.  In so finding, the ALJ acknowledged that treatment records documented lower extremity edema in two instances but

noted that, on multiple occasions, those records documented no such edema. *See id.*[3] The ALJ further pointed out that no edema-related limitations had been assessed. *See id.*

The plaintiff offers no evidence to rebut these findings apart from the diagnosis itself and her own reports, neither of which suffices to demonstrate that the ALJ erred in deeming her edema nonsevere. A diagnosis, "standing alone, does not establish the severity of the disease nor the limitations that result for a particular individual." *Dowell v. Colvin*, No. 2:13-cv-246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). To the extent that the plaintiff relies on her own reports, she does not separately challenge the ALJ's finding that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Record at 90.

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Sleep Apnea & Chronic Sleep Deprivation

The plaintiff next contends that the ALJ erred by failing to acknowledge and account for what she characterizes as her "chronic sleep deprivation" and its "implications for [her] ability to sustain the exertion and concentration, attention and pace needed to sustain regular full-time work." Statement of Errors at 8.

The ALJ specifically considered the plaintiff's sleep issues, noting that "a sleep study found no evidence of sleep apnea" but acknowledging that the plaintiff had been diagnosed with "moderately disrupted sleep architecture." Record at 86. He also noted that, in response to the plaintiff's "continued subjective complaints of unrestored sleep," one of her providers had

---

[3] The commissioner points out that the ALJ overlooked a third instance in which "[t]race, symmetrical, non-tender lower extremity edema" was documented in June 2017. Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 6 n.3 (quoting Record at 592). However, as the commissioner argues, *see id.*, the error is harmless. It neither undermines the ALJ's finding that edema was only rarely documented nor calls into question the bases for his conclusion that it was nonsevere.

4

recommended that she undergo a second sleep study and quit smoking, but she had not followed these recommendations. *Id.* The ALJ also found it significant that the plaintiff testified that her sleep problems were caused by "vivid dreams" rather than a sleep impairment. *Id.* He explained, "Due to a lack of evidence that sleep apnea results in any work related limitations, the undersigned has found this condition to be nonsevere." *Id.*

The plaintiff contends that the ALJ was not qualified to interpret the results of her sleep study and that the medical evidence establishes that she is "suffering from significant sleep deprivation" regardless of whether she has been diagnosed with sleep apnea. Statement of Errors at 6-8. She points to her diagnosis of a "moderately disrupted sleep architecture" and a progress note in which Dr. Worthing expressed "a high concern" that she might be suffering from sleep apnea on the basis of her subjective complaints. *Id.* at 7-8.

The plaintiff has failed to demonstrate error in the ALJ's conclusion that her sleep issues were nonsevere. First, "this court has rejected the notion that it is *per se* error for an ALJ to determine that an impairment is nonsevere in the absence of expert medical assistance." *Leech v. Berryhill*, No. 2:16-cv-00487-GZS, 2017 WL 2817023, at *3 (D. Me. June 28, 2017) (rec. dec., *aff'd* July 26, 2017) (citation omitted). Instead, this court has affirmed an ALJ's determination of nonseverity when, as here, the ALJ identified substantial evidence supporting his conclusion. *See id.*; *Small v. Colvin*, No. 2:14-cv-042-NT, 2015 WL 860856, at *7 (D. Me. Feb. 27, 2015).

Second, the plaintiff's diagnosis of a moderately disrupted sleep architecture is not sufficient in itself to evidence a severe impairment. "Even with a medical diagnosis, a claimant must show that that the impairment significantly limited [her] ability to do basic work activity at the relevant time." *Jeremy J. S. v. Berryhill*, No. 1:18-cv-00192-LEW, 2019 WL 2005795, at *3 (D. Me. May 7, 2019) (rec. dec., *aff'd* June 19, 2019) (citation and internal quotation marks

5

omitted). Once again, the plaintiff points to medical records reflecting her subjective reports without separately addressing the fact that the ALJ found her allegations less than fully credible. *See* Statement of Errors at 6, 8. Moreover, Dr. Worthing, the provider who expressed "high concern" that the plaintiff might be suffering from sleep apnea based on her complaints of fatigue, was the same one who recommended that she get another sleep study (which, as the ALJ found, she failed to do). Record at 958. In the same progress note, Dr. Worthing suggested that it was "also quite possible" that the plaintiff's fatigue was "a symptom of her waning depression" and that "her body [wa]s still recovering from" a "significant episode of depression and substance abuse." *Id.* These inconclusive findings do not undermine the ALJ's conclusion that the plaintiff's sleep issues were nonsevere. *See, e.g., Day v. Berryhill*, No. 1:16-cv-00593-JAW, 2017 WL 5037454, at *3 (D. Me. Nov. 2, 2017) (rec. dec., *aff'd* Nov. 20, 2017) ("[T]he existence of inconclusive or conflicting evidence at Step 2 does not require a finding that a claimant has a severe impairment or impairments.").

For these reasons, the plaintiff has failed to demonstrate entitlement to remand on this basis.

### C. Physical RFC

The plaintiff next contends that, in determining her physical RFC, the ALJ erroneously purported to rely on the opinions of agency nonexamining consultants who assessed "peripheral neuropathy, a neurological impairment that [she] does not have[,]" rather than her "spondylosis and degenerative disc disease." Statement of Errors at 9. She reasons that, in the absence of any relevant medical expert opinion, the ALJ necessarily impermissibly construed the raw medical evidence to assess limitations arising from those impairments, rendering his physical RFC determination unsupported by substantial evidence. *See id*. at 9-10.

By way of background, Donald Trumbull, M.D., reviewed the plaintiff's physical disability claims at the initial level in September 2017, Lawrence Schaffzin, M.D., reviewed them on reconsideration in January 2018, and Jay Shaw, M.D., conducted a further review in June 2018, concluding that "[a] review of all available evidence supports and [is] consistent with" the Schaffzin assessment. Record at 92, 163-72, 185-95, 898. All three assessed the plaintiff's allegations that she had "two bulging discs" in her neck, was unable to use her right arm, and suffered from constant pain. *Id.* at 163, 185, 898.

Dr. Trumbull considered medical evidence indicative of cervical radiculopathy, cervical spondylosis, and/or Parsonage-Turner syndrome. *See id.* at 166. Similarly, Dr. Schaffzin considered new medical evidence of cervical radiculopathy and cervical spondylosis. *See id.* at 189. Drs. Trumbull and Schaffzin both cited "Parsonage Turner Synd[drome]" and "cervical [degenerative disc disease/degenerative joint disease]" as the basis for their assessed physical limitations, although noting that it was unclear whether the etiology was cervical. *Id.* at 168-69, 191-92. Both also described the plaintiff's condition as "severe now [with] recent onset of [right upper extremity] brachial neuritis thought to be viral/immune mediated but likely will resolve or significant recovery over 6-9 [months]." *Id.* at 169, 192. Both deemed it reasonable to project the found RFC to 12 months from the plaintiff's alleged June 21, 2017, onset date of disability. *See id.* at 168-69, 191-92. Nevertheless, Drs. Trumbull and Schaffzin assessed only one severe medically-determinable impairment: peripheral neuropathy. *Id.* at 167, 190. At the 12-month mark, in June 2018, Dr. Shaw concurred with Dr. Schaffzin's physical RFC assessment, *see id.* at 898, which, in turn, was identical to that of Dr. Trumbull, *compare id.* at 168-69 *with id.* at 191-92. Dr. Shaw noted that a February 23, 2018, neurosurgical consult indicated that the plaintiff might choose further neck surgery. *See id.* at 898.

In his decision, the ALJ adopted a physical RFC that closely tracked that assessed by Drs. Trumbull and Schaffzin, *compare* Finding 5, *id.* at 89 *with id.* at 168-69, 191-92, deeming the opinions of all three agency nonexamining consultants "persuasive[,]" *id.* at 92. He explained that the longitudinal evidence bore out that the plaintiff had no greater limitations than assessed by those consultants, and certainly no work-preclusive limitations lasting at least 12 months, given the success of discectomy surgery that the plaintiff did indeed have in March 2018. *See id.* at 91-92 (detailing relevant treatment records). He underscored that the plaintiff had "demonstrated and self-reported significant symptom improvement" following that uncomplicated surgery and "lacked treatment" thereafter. *Id*. at 92; *see also id*. at 91 (noting that, by April 2018, within 12 months of her alleged onset date of disability, the plaintiff was "doing 'beautifully' with 'complete elimination of pain and paresthesia radiating into her shoulders and arms[,]'" her strength had returned, and she had "only 'minor' neck axial symptoms" (citations omitted)).

The commissioner contends that, despite Drs. Trumbull's and Schaffzin's error in miscoding or misdiagnosing peripheral neuropathy, the ALJ was still entitled to rely on their opinions because they considered the plaintiff's symptoms and explicitly accounted for the possibility that those symptoms were caused by the impairments the ALJ ultimately found. *See* Opposition at 9-16. In these unusual circumstances, I agree.[4]

The ALJ, therefore, did not interpret raw medical evidence to craft the plaintiff's physical RFC. Nor did he exceed the bounds of his authority in determining that records postdating the agency nonexamining consultants' review both demonstrated that the plaintiff had no work-preclusive symptoms lasting for at least 12 months and supported adoption of those consultants'

---

[4] These circumstances materially distinguish this case from *John W. D. v. Saul*, No. 2:19-cv-00478-GZS, 2020 WL 6709556, at *3-4 (D. Me. Nov. 15, 2020) (rec. dec., *aff'd* Dec. 1, 2020), in which this court concluded that an ALJ could not rely on the opinions of agency nonexamining consultants when assessing the limitations flowing from an impairment that those consultants explicitly rejected.

RFC assessments. *See* Opposition at 15-16; *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6 n.5 (D. Me. Jan. 17, 2011) (rec. dec., *aff'd* Feb. 22, 2011) (holding that an ALJ is "perfectly competent" to judge the materiality of later-submitted evidence); *Wood v. Astrue*, No. 1:10-cv-243-JAW, 2011 WL 1298460, at *3 (D. Me. Mar. 31, 2011) (rec. dec., *aff'd* Apr. 19, 2011) ("The [ALJ's] conclusion does not require an interpretation of any raw medical evidence; duration of an impairment is a matter that can be determined, in most cases, by the application of common knowledge."). Moreover, the plaintiff cites no evidence calling these findings into question. *See* Statement of Errors at 8-10.

Remand, accordingly, is unwarranted on the basis of this point of error.

### D.  Mental RFC

The plaintiff also challenges the ALJ's mental RFC assessment as being unsupported by substantial evidence. *See* Statement of Errors at 11-13.

The ALJ found that "[t]he medical evidence demonstrates that with treatment including medication and counseling, the [plaintiff]'s depression improved within a 12-month period and is in full remission." Record at 92 (citation and internal quotation marks omitted). He noted, for example, that less than 12 months after the plaintiff's alleged onset date of disability, treatment notes indicated that her depression was in full remission and that she reported doing "remarkably well" and having a "new lease on life," "a better mood," and "better coping skills[.]" *Id.* (quoting *id.* at 942-43). The ALJ also found it significant that the plaintiff reported in June 2018 getting a job at a grocery store and doing "very well" with it. *Id.* (quoting *id.* at 943). He deemed the plaintiff's depression severe, "despite improvement with treatment[,] . . . based on the type of treatment received during the period deliberated, which has included intensive outpatient treatment, counseling, and medications." *Id.*

9

The ALJ further explained that, "[b]ased on the testimony of the [plaintiff] and in [the] light most favorable to [her], giving her the benefit of the doubt, the undersigned has incorporated simple and non-public work into the [RFC]." *Id.*; *see also id.* at 114-18 (plaintiff's testimony describing her difficulties in concentrating and interacting with the public).

The plaintiff correctly points out that, in assessing the plaintiff's depression, the ALJ rejected the expert opinions of record from an agency nonexamining consultant and two treating providers. *See* Statement of Errors at 11; Record at 92-93. She does not challenge the weight assigned to those opinions but, rather, contends that the ALJ "should have sought support from a medical expert, but he elected instead to interpret the medical evidence for the mental RFC." Statement of Errors at 11. She argues that "evidence of improvement is not a legally authorized substitute for the requirement that the mental RFC requires the support of the opinions of a medical expert[,]" asserting that "commonsense" would not have equipped the ALJ to assess her "mental RFC without expert assistance." *Id.* at 13 (emphasis omitted).[5]

This case, the plaintiff asserts, is like others in which this court has held that an ALJ overstepped his boundaries of competence in assessing a claimant's mental functioning without expert assistance. *See id.*; *Bernier v. Colvin*, No. 1:14-cv-29-JHR, 2015 WL 46062, at *2-4 (D. Me. Jan. 2, 2015) (rejecting commissioner's argument that ALJ made a permissible commonsense

---

[5] The plaintiff also points to records postdating those indicating that her depression was in full remission showing that in April 2018 Dr. Worthing noted that she presented with active moderate clinical depression, and she was admitted to an intensive psychiatric outpatient program. *See* Statement of Errors at 11-12 (citing Record at 931, 1124-60). This evidence, she suggests, undermines the ALJ's finding that her symptoms had improved. *See id.* I am not persuaded. Although the ALJ cited the "full remission" records as evidence that the plaintiff's symptoms had improved, he also explicitly acknowledged the plaintiff's intensive outpatient therapy and relied primarily on treatment notes postdating that therapy that indicated the plaintiff had responded well to treatment, was doing "remarkably well" and was able to return to work. Record at 92 (quoting *id.* at 942-43). Moreover, the plaintiff reported that her depression was "completely gone" at the last session of her intensive outpatient therapy program on May 17, 2018. *Id.* at 1160. Additionally, Dr. Worthing, the provider who indicated that the plaintiff was suffering from active moderate clinical depression in April 2018, *see* Record at 931, documented the significant improvements as of June 2018 that were cited by the ALJ, *see id.* at 942-43. As such, these quibbles do not justify remand. *See, e.g., Archer v. Colvin*, Civil No. 1:13-cv-00018-NT, 2014 WL 457641, at *3 n.3 (D. Me. Feb. 4, 2014) ("Remand requires a showing that the outcome of the claim for benefits would likely be different if the plaintiff's view of an issue is correct.").

judgment about claimant's mental RFC when ALJ "rejected all three expert opinions of record" and crafted the "RFC based on the raw medical evidence and other evidence of record, including the plaintiff's own statements"); *see also Vallier v. Berryhill*, No. 1:17-cv-00064-DBH, 2017 WL 5665539, at *3-4 (D. Me. Nov. 26, 2017) (rec. dec., *aff'd* Dec. 12, 2017) (holding similarly); *Coyne v. Berryhill*, No. 2:16-cv-00536-GZS, 2017 WL 4364184, at *3 (D. Me. Oct. 1, 2017) (rec. dec., *aff'd* Oct. 19, 2017) (same).

In contrast to those cases, however, the ALJ in this case did not craft an RFC based on the raw medical evidence of the plaintiff's improvement. Rather, he found that the plaintiff's depression had not met the so-called "duration requirement." Record at 91-93; 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months."); Barnhart v. Walton, 535 U.S. 212, 222-23 (2002) (commissioner's 12-month duration requirement applies "to both the 'impairment' and the 'inability' to work requirements"). Because, as discussed above, duration is an issue that can be assessed as a matter of common knowledge, *see Wood*, 2011 WL 1298460, at *3, the ALJ supportably relied on the treatment records showing that the plaintiff's depression had responded well to treatment, that she was doing "remarkably well[,]" and that she was able to work as a cashier and was "doing 'very well[,]' *see* Record at 92 (quoting *id.* at 942). He did not run afoul of the rule against interpreting raw medical evidence.

The ALJ then explained that, although the plaintiff's depression had not met the duration requirement, he had deemed it severe based on the intensity of treatment she had received during the relevant period and had given her the benefit of the doubt in assessing mental limitations derived from her testimony. *See* Record at 92. Again, in so doing, he did not impermissibly construe raw medical evidence. Rather, he made clear that he had given the plaintiff the benefit

11

of the doubt by crediting her testimony of difficulty concentrating and dealing with the public. In such circumstances, remand is not required. *See, e.g.*, *Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *4 (D. Me. Mar. 28, 2019) (ALJ did not err in assessing claimant's mental RFC when it was "reasonably apparent that the ALJ did not construe raw medical evidence but, rather, gave the [claimant] the benefit of the doubt by crediting some of her subjective allegations of difficulties in social functioning").

Remand, accordingly, is unwarranted on the basis of this final point of error.

### E. Reliance on Vocational Expert Testimony

The success of the plaintiff's final argument – that the ALJ erred in relying on the testimony of the vocational expert predicated on a flawed RFC – hinges upon the success of his challenges to the ALJ's RFC determination. *See* Statement of Errors at 13-14. Because, for the reasons discussed above, those challenges fall short, this derivative argument likewise fails. *See, e.g.*, *Kristina D. B.*, 2019 WL 1407407, at *4-5.

### II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 7th day of February, 2021.

       /s/ John H. Rich III
       John H. Rich III
       United States Magistrate Judge